TAMA COUNTY v. MELENDY ET AL.

SAME v. VAN SAUN ET AL.

SAME v. BABCOCK ET AL.

SAME v. LOW BROS. & CO.

1. **Practice:** APPEAL: WAIVER OF. A party does not waive his right to appeal from a judgment by causing a transcript thereof to be filed in other counties, for the purpose of preserving a lien upon real estate, no action toward enforcing the judgment having been taken by him.

2. **Swamp Lands:** CONVEYANCE BY COUNTY. A resolution of the board of supervisors cannot operate as a formal conveyance of the title of the county to swamp lands. Chapter 32, laws of 1862, authorizing a conveyance in that way of certain lands owned by the county, applies only to those therein specified.

3. **Res Adjudicata:** AS BETWEEN DEFENDANTS. A county and a railroad company were made defendants in a suit commenced by citizens of the former to enjoin the conveyance of certain lands by the county to the railroad company. On final hearing the injunction was refused: *Held*, that the judgment in such action did not constitute an adjudication of the questions involved as between the defendants, it not appearing that their interests at that time were adverse.

*Appeal from Tama Circuit Court.*

SATURDAY, DECEMBER 18.

THESE actions were commenced in Pocahontas Circuit Court, to quiet the title of the plaintiff to some 1030 acres of land situated in that county. Afterward by agreement of the parties the place of trial was changed to the Tama Circuit Court. Issue was taken upon the allegations of the petition, and trials were had upon written evidence. A final decree was entered declaring that the plaintiff was not the owner of the lands, and adjudging the several defendants to be the owners in fee, and requiring the defendants to repay to plaintiff certain taxes which the plaintiff had paid on said lands after the defendants became the owners thereof. From

the decrees as to the title of the lands, the plaintiff appeals; and from that part of the decrees requiring the repayment of the taxes, the defendants appeal.

*Ebersole & Willett*, for plaintiff.

*Struble & Kinne*, for defendants.

ROTHROCK, J.—I. The cases involve substantially the same questions. They are presented upon an agreed abstract, and their separate consideration is not, therefore, required. The defendants filed with the submission of the causes in this court a motion to dismiss the appeals, upon the ground that the plaintiff has no right to prosecute the same, because after the final decrees in the Circuit Court the plaintiff caused transcripts to be made of said decrees, and filed them in the office of the clerk of the Circuit Court of Pocahontas county, thus making the judgment for the repayment of the taxes liens upon the land in controversy.

1. PRACTICE: appeal: waiver of.

The motion is not well taken. It is correct that a party cannot accept the benefits of an adjudication and afterward appeal therefrom. Code, § 3212; *Independent District of Altoona v. District Township of Delaware*, 44 Iowa, 201. It does not appear, however, that the plaintiff has caused execution to be issued upon the judgments in its favor, nor that it has done any act to enforce the same. Counsel for the county, in argument upon the motion, assert that the only object in filing the transcripts was to make the judgments liens upon the land in controversy, it being situated in Pocahontas county, so that in case of an affirmance in this court the judgments may be collected. This is reasonable in view of the fact that no effort at collection has been made, and we are clearly of the opinion that appellant has not forfeited its right to prosecute the appeals.

II. The defendants insist that the causes are not triable anew in this court because they were not tried in the court

below upon written evidence. This objection cannot be sustained. The causes are presented here upon an agreed abstract which recites that it is an abstract of all the evidence. There was a consent order made in the causes on the 12th of November, 1877, which provided that the trials should be "on written testimony, and oral testimony to be taken in the form of depositions." The abstract does not show that any evidence was offered nor introduced which was not reduced to writing. Under these circumstances the causes are triable anew in this court.

III. Having thus disposed of these preliminary questions, we come to the merits of the controversy. It appears from 2. SWAMP LANDS: the abstract that the lands in question were conveyance by county. entered by the State of Iowa for Tama county as indemnity swamp lands, and pursuant to such entry the State patented the lands to the county on the 22d day of November, 1865. The title of the county under this patent is conceded. The land was entered by the State September 23, 1864. On the 5th day of September, 1865, the board of supervisors of Tama county passed a resolution to submit to the legal voters of the county at the next general election thereafter the proposition "whether or not said county will devote the swamp lands and the proceeds of the swamp lands belonging to said county, or held by said county, to the Iowa Central Railroad Company, provided said road runs through said county." The proposition was submitted to a vote at the October election, 1865, and the same was carried by a large majority. On the 4th day of January, 1866, the said board took the following action:

"Mr. Dysart moved that a special committee of three be appointed in relation to Iowa Central Railroad matters, and that they report tomorrow morning at nine o'clock. Carried. Messrs. Dysart, Johnson and Shugart appointed on said committee. Mr. Wilson moved to add two members to said committee. Carried. Messrs. Wilson and Tenny appointed. And now, to-wit: January 4, 1866, 9 o'clock A. M., board

met pursuant to adjournment. Roll called and quorum present. The committee on Iowa Central Railroad matters made a verbal report, and also submitted the following:

" WHEREAS, at the regular meeting of the board of supervisors of Tama county, Iowa, duly held at Toledo, the county seat of said county, beginning on the first Monday of September, A. D. 1865, the following proceedings were duly resolved and ordered: That at the general election to be holden on the second Tuesday of October, A. D. 1865, there shall be submitted to the legal voters of said county a proposition, to-wit: Whether the county of Tama, in the State of Iowa, shall donate the swamp lands and the proceeds of the same, belonging to said county, to and for the building of the Iowa Central Railroad within said county, and across the same; and whereas, at the meeting of the board of canvassers of said county, held on the 16th day of October, A. D. 1865, it appeared that a majority of all votes cast at said election were in favor of said proposition, and the same was declared to be duly adopted, and ordered to be so recorded, and a proclamation of the same published as required by law, which was done accordingly; and whereas, swamp land indemnity belonging to said county has been located upon the lands hereafter mentioned:

" Be it resolved by the board of supervisors, duly assembled at this regular meeting on the 4th day of January A. D. 1866, at Toledo, the county seat of said county, that the following real estate situated in the county of Pocahontas, and state of Iowa, and described as follows, to-wit:

" The northwest quarter and the south half of the southwest quarter of section two, and the north half of the southwest quarter and the southeast fourth of the southwest quarter of section 3, the southwest fourth of the southeast fourth, the north fractional half, the northeast fourth of the southwest quarter, the south fractional half of the southwest quarter, and the north half of the southeast quarter, all of section 6, all in township 93 north, of range 32 west, containing in all

one thousand, twenty-nine and ninety-nine hundredths acres, be, and is hereby, sold and conveyed by said county of Tama, in the State of Iowa, to the Iowa Central Railroad Company."

Mr. Brooks moved to accept the report. Carried and report accepted. Mr. Dysart moved to adopt the report. Motion carried and the report adopted.

January 8, 1869, a motion was made at a session of the board to the effect that the chairman of the board and the county auditor should execute in the name of the county quit-claim deeds for said land to any person or persons whom the railroad company should designate. The board refused to pass said motion or resolution, upon the ground that the railroad "was not running through Tama county."

On the 23d day of May, 1870, the said railroad company made and delivered to the defendant Melendy a quitclaim deed for all of said land, and on the 19th day of August, 1870, the auditor of Tama county made and certified a true copy of the minutes of the board in relation to the donation of said lands, excepting the action of the board in refusing to make deeds for the same. This certified copy was in September, 1870, recorded in the recorder's office of Pocahontas county. The said Melendy afterward made to the other defendants quitclaim deeds of part of the lands.

The Iowa Central Railroad Company was organized with a view to the construction of a railroad running north and south through Tama and other counties in this State. No part of said road has ever been completed and put in operation in Tama county. From November 1, 1865, to May 1, 1867, said company expended in Tama county in grading said proposed road, and in building bridges, an amount of money largely exceeding the value of the lands in controversy. The work on said road in said county ceased about May 1, 1867, and has never been resumed.

From and after 1866 as long as said company continued to exist said Peter Melendy was its vice president, and when said lands were quitclaimed to him he knew that no part of

said road had been completed in Tama county, and that the construction thereof had ceased.

From the foregoing facts we are required to determine whether the title to the land was conveyed by the resolutions of the board passed at the January session, 1866. The action of the board in submitting the question of appropriating the lands was based on section 986 of the Revision of 1860, as amended by chapter 77 of the Acts of 1862. Under the law the land could only be appropriated to the proposed purpose by submitting the question to the vote of the people. It will be observed that the question submitted, as contained in the resolution of Sept. 5, 1865, contained a proviso in these words, "provided said road runs through said county." The fair construction of this proviso is that no land shall be appropriated or donated unless the road "runs," or more correctly speaking, *shall run, or be completed and in operation* through the county. But counsel in their respective arguments rest this branch of the cases upon the question whether the resolutions of the board operated as a formal conveyance of the title to the land, and not upon the question as to whether the board was invested with the power to convey.

It is urged by the counsel for defendants that the resolutions operated as a conveyance under chapter 32, of the laws of 1862. That chapter has no reference whatever to the conveyance by a county of its swamp lands. It specifically provides what lands may be conveyed by a resolution of the board. It is lands bid off at an execution sale in favor of a county, or lands taken to secure a debt due the county. Swamp lands do not belong to either of these classes. Besides, section five, which provides that a resolution of the board shall operate as a conveyance, requires that the resolution shall be entered on the minutes of the board, the yeas and nays shall be called and shall be entered with the date thereof, and the resolution shall express the consideration paid for said land, and a transcript of the proceedings relating to said sale; the resolution and yeas and nays on its passage made and certified shall be a

sufficient deed of conveyance by the county.  In this instance
the proceedings do not show that the yeas and nays were
called and recorded, and no consideration was named.  It is
evident from the whole tenor of the act that it had no appli-
cation to the donation of swamp lands for the purposes auth-
orized by law.  If it had no such application, the resolution
was not a conveyance of the land.  The conveyance should
have been made by deed with the county seal affixed.  See
sections 244 and 325 of the Revision of 1860.

IV.    But it is contended by counsel for defendants that
the title to the lands in question has been adjudicated in a
former action, and that the county is by such ad-
judication estopped from claiming title.  The
facts upon which the contention is based are as
follows:

3. RES ADJU-
DICATA : as
between de-
fendants.

On the 22d of February, 1867, James A. Willey, Oscar
Parks and other citizens and tax payers of Tama county, filed
their petition in the Tama District Court, to which they made
the Iowa Central Railroad Company, The County of Tama,
the clerk of the board of supervisors and the treasurer of
said county, parties defendant.  This petition exhibits all of
the acts of the board of supervisors in relation to the donation
of said swamp lands, claims that they are illegal and void,
and while it designates the resolution of January, 1866, as a
conveyance of the land, it prays that the county of Tama,
defendant, be restrained from transferring to said railroad
company any of the swamp lands of the county.  It also prays
that the railroad company be restrained from conveying to
any person any of the lands granted and conveyed by said
board in January, 1866.  A temporary injunction was granted.
The defendants appeared and demurred to the petition (upon
what grounds does not appear), and in September, 1867, the
demurrers were sustained, and the injunction was dissolved.
The plaintiffs appealed, and the judgment of the District
Court was affirmed.  See *Parks v. Iowa Cent. R. Co.*, 24
Iowa, 188.

VOL. LV—26.

It is urged in substance that although the railroad company and the county were both defendants in that action, yet that their interests as to the land were necessarily adverse, and that the effect of the adjudication was a determination that the resolution of the board operated as a conveyance of the title. We think the railroad company and the county were not in any sense adverse parties in that suit. It does not appear that the construction of the road was then permanently abandoned. It is true work had ceased about May 1, 1867, and the cause was determined in the month of September, 1867. If the enterprise was not then believed to be at an end, the county and the railroad company were both interested in its prosecution, and it does not appear that it was the interest of the county to refuse to comply with the terms of the resolution, under which the electors determined that the land should be donated to the company. Indeed, it appears from the opinion in that case, in this court, that the question as to the validity of the resolution as a conveyance was not discussed. It does appear that objection was made that no *contract* was submitted to the people for their approval. This was held not to be necessary. The significant remark is made in the opinion, " that there is no pretense that the road is not being built; nor that the enterprise was not in fact prosecuted as contemplated by the vote."

In conclusion on this point we may properly remark that, for aught that appears, the county and the railroad company were at the time of the adjudication in question striving to effect the completion of the road, and that they were in no sense adversary parties, but that both were endeavoring to comply with the vote of the people, which donated the land provided the road should be constructed and operated.

V. The defendants hold the lands by quit claim deeds, and we do not understand it to be claimed that their right is any greater than the right of the railroad company would be if it had not conveyed to the defendant Melendy. No ques-

tion as to possession arises. The land is unbroken and unin-closed prairie.

Our conclusion is that the county is the owner in fee of the land, and that there should be decrees quieting the title as prayed in the petition. This disposition of the causes dis-poses of the defendants' appeal as to the judgments for the re-payment of the taxes.

REVERSED.

SEEVERS, J., took no part in the determination of this case.